Case 3:06-cv-0057. WT Document 74 Filed 04/20/. 7 Page 1 of 21

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SALVATORE J. LENTINI, on behalf of himself and all others similarly situated, | ) | Civil Action No. |
| Plaintiff, | ) | FIRST AMENDED CLASS ACTION COMPLAINT |
| v. | ) | |
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, | ) | Demand for Jury Trial |
| Defendant. | ) | April 20, 2007 |

Plaintiff Salvatore J. Lentini ("Plaintiff" or "Lentini"), by his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Fidelity National Title Insurance Company ("Defendant" or "Fidelity").

## I. BACKGROUND

1. For years, Defendant has reaped enormous profits at the expense of its customers by engaging in a routine practice of charging them far in excess of Defendant's statutorily-mandated title insurance rates. Misrepresenting to these customers that the inflated amounts being charged are correct, and failing to disclose to these customers that they are entitled to hundreds of dollars in savings when they purchase title insurance in connection with refinance transactions, Defendant knowingly and routinely has overcharged its customers for title insurance in violation of Connecticut General Statutes §§ 38a-419, 38a-816(1)(a), 38a-816(8), 42-110a et seq., and Connecticut common law.

2. Title insurance is an inevitable and unavoidable cost of any residential refinancing transaction. Lenders – who are the beneficiaries of the policy – generally require

Case 3:06-cv-0057 WT Document 74 Filed 04/20/ 7 Page 2 of 21

that title insurance be purchased in order to protect their collateral if a title challenge arises. Without title insurance, lenders generally will not provide a loan to refinance a residential mortgage.

3. Unknown to most customers is that the title insurance industry as a whole, including Defendant, employs a multi-tiered pricing structure. The so-called "Original Rate" or "Basic Rate" is the full price for title insurance. However, customers who purchase title insurance in connection with a refinance transaction are entitled to a significant discount on the Original Rate. This discount goes by various names, including "reissue," "refinance," "prior policy" or "substitution" rate (collectively, the "refinance rate" or "refinance rate discount").

4. Refinance rates are significantly lower than the Original Rates because title companies perform less work in preparing a refinance policy and insurance companies insure against less risk. Refinance transactions generally occur when there has been no change in ownership of a property and a short period of time has elapsed between the purchase of the original policy and the refinance transaction. As a result, title insurers typically rely on the comprehensive title search conducted at the placement of the original policy, and spend considerably less time and money conducting an updated title search for placement of a refinance policy. Additionally, refinance policies only insure policyholders for title-related claims that arise from the short period of time in between placement of the original and refinance policies. Therefore, a refinance policy insures against less risk than an originally-placed policy.

5. Since at least the mid-1990s, the title insurance industry, including Defendant, has overcharged individual homeowners hundreds of dollars for title insurance by failing to pass along the statutorily-mandated refinance rate discounts in connection with residential refinance transactions.

6. This overcharging and non-disclosure of refinance rate discounts by title insurers is not an isolated occurrence. Indeed, the Executive Vice President of the industry's trade association, the American Land Title Association (Fidelity is a member of ALTA, and Fidelity's President and Chief Executive Officer, Rande K. Yeager, is President of ALTA's Board of Governors), has acknowledged publicly that "[w]e know not everyone is familiar" with refinance rate discounts, and "[w]e know [overcharging] is a problem." Kenneth R. Harney, *Refinancers Should Seek Lower Rate on Title Insurance*, The Baltimore Sun, April 13, 2003, at 1L. Yet the title insurance industry, including Defendant, continues to engage in these fraudulent, deceptive and misleading acts as a matter of policy and practice.

7. The title insurance industry, including Defendant, has profited handsomely by disregarding the law and overcharging homeowners. For example, with interest rates in the past few years at a 40-year low, eager homeowners have lined up to refinance their existing home loans. In 2002, Americans paid approximately $11 billion, up from $7.8 billion in 2000, for title insurance and related services. Ruth Simon, *Good Deeds*: *Refinancing Boom Puts New Pressure on Title Industry*, The Wall Street Journal, Dec. 18, 2002, at A1.

8. Furthermore, title insurance companies have so grossly inflated the cost of title insurance that they only pay out five to ten cents in claims for every dollar in premiums they collect. Melynda Dovel Wilcox, *Home Buyers Beware*, Kiplinger's Oct. 2001, at 96-100. This is in sharp contrast to other insurance industries, such as property and casualty insurers, that pay out ninety cents for every dollar in premiums collected.

9. One of the two major home mortgage financiers, Fannie Mae, has noted publicly the financial drag that the industry's exorbitant pricing places on homeowners. Fannie Mae's vice president for credit policy has stated, "[i]t's safe to say that prices [of title insurance],

Case 3:06-cv-0057. WT Document 74 Filed 04/20/. 7 Page 4 of 21

in many respects, are higher than they ought to be." Simon, *supra* page 4. The other major financier, Freddie Mac, went so far as to meet with title insurance executives seeking that they disclose the refinance rate to their customers so that the customers could benefit from the potentially huge savings. Kenneth R. Harney, *Refinancing's Magic Words*, The Washington Post, June 8, 2002, at H01. Yet, the industry continues to charge customers inflated rates for title insurance.

10. As set forth below, customers in the State of Connecticut also have fallen victim to these unlawful industry-wide policies and practices.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2)(A), in that this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of Plaintiff is a citizen of a State different from any Defendant." Id. The named Plaintiff is a citizen of the State of Connecticut, and the Defendant is a citizen of the State of California.

12. Venue is appropriate inasmuch as named Plaintiff Salvatore Lentini is a resident of the State of Connecticut. Venue is also proper in this Court because Defendant Fidelity systematically and continuously transacts business in the State of Connecticut and the causes of action set forth in this Complaint, in part, arose in the State of Connecticut. The transaction at issue took place in the State of Connecticut, and the property for which title insurance was purchased is located in the State of Connecticut.

Case 3:06-cv-0057 WT Document 74 Filed 04/20/ 7 Page 5 of 21

## III. THE PARTIES

13. Plaintiff Salvatore Lentini is an individual currently residing in Wethersfield, Connecticut.

14. Defendant Fidelity is a California corporation with a principal place of business in California.

## IV. CLASS ALLEGATIONS

15. This class action is brought on behalf of the Plaintiff and the Class members (defined below) to recover for the harm caused by the Defendant's pattern of deceptive acts and practices as alleged herein.

16. Throughout the Class Period (defined below), Defendant engaged in deceptive acts and practices and defrauded members of the Class (defined below) by charging rates in excess of the statutorily-mandated rate and/or by failing to disclose to consumers of title insurance that they were entitled to reduced title insurance premiums. Rather than abiding by the statutorily-mandated rates, Defendant affirmatively and deliberately overcharged these consumers to the detriment of Plaintiff and the other members of the Class.

17. The acts, practices and conduct of which Plaintiff complains commonly affect a class consisting of all residential consumers in the State of Connecticut who, at any time from April 13, 2000 to the present (the "Class Period"): (a) paid premiums for the purchase of title insurance from Defendant Fidelity in connection with refinance transactions; (b) qualified for discounted refinance rates; and (c) did not receive such discounted refinance rates (the "Class").

Case 3:06-cv-0057. .WT Document 74 Filed 04/20/. 7 Page 6 of 21

18. The Class, as defined below, is identifiable and unambiguous based on objective information and criteria.

19. The Plaintiff is a member of the Class.

20. The members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of thousands of individuals.

21. There are questions of law and fact common to the members of the Class, which questions predominate over any individual issues.

22. The claims and defenses of Plaintiff are typical of the claims of all members of the Class. By proving his case, the Plaintiff will simultaneously prove the case of the members of the Class.

23. The Plaintiff will fairly and adequately represent the Class. Plaintiff is willing and able to serve as representative of the Class, and has no knowledge of any possible divergent interest between or among Plaintiff and any member of the Class. Plaintiff has retained highly competent counsel experienced in class actions and complex litigation to provide representation on behalf of the Plaintiff and the Class.

24. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

25. The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

26. Questions of law and fact common to members of the Class predominate over any questions affecting individual members. The determinative facts and legal principles apply universally among Plaintiff and the members of the Class. Indeed, the predominant legal issue in this case, which cuts across the entire Class, is whether Defendant breached a legal duty universally owed to the Plaintiff and the members of the Class in failing to charge the correct discounted refinance rate and/or failing to disclose the existence of the discounted refinance rate. If liability against Defendant is established on the basis of the common facts applied to universally applicable principles of law, then damages can be precisely calculated based on objective data.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy for reasons including that, due to the expense of pursuing individual litigation regarding Defendant's common course of conduct alleged herein, members of the Class would, as a practical matter, be effectively precluded from protecting and enforcing their legal rights.

## V. FACTUAL ALLEGATIONS

28. Pursuant to Connecticut General Statutes § 38a-419(a), a title insurer must file with the Insurance Commissioner "premium rate schedules it proposes to use in this state."

29. Title insurers may not "use or collect any premium after October 1, 1990, except in accordance with the premium rate schedule filed with and approved by the commissioner as required by this section." Conn. Gen. Stat. § 38a-419(c).

30. In August 2002, Defendant Fidelity filed a rate manual with the Connecticut Insurance Department, effective for all applications for title insurance received

between August 26, 2002 and February 8, 2006 ("2002 Rate Manual"). The 2002 Rate Manual is annexed hereto as Exhibit A and is incorporated by reference.

31. The 2002 Rate Manual establishes a "regular rate" and a "reduced rate" in the context of refinance mortgages. See 2002 Rate Manual at ¶ 5 and schedule attached thereto.

32. Section 5 of the 2002 Rate Manual provides in relevant part:

> Whenever mortgage insurance is applied for within ten years from the date of issuance of a policy by any licensed insurer in Connecticut and the premises to be insured are identical and there has been no change in the fee ownership, the Company may accept application, the charge for which insurance shall be 60 percent of the applicable scheduled rate up to the largest amount of existing insurance (fee policy or present balance of existing insured mortgage) plus the full applicable scheduled rate on any excess.

33. Upon information and belief, Fidelity's rate formula, rules and rate charts applicable for the period from April 13, 2000 through August 25, 2002 were the same as those set forth in the 2002 Rate Manual.

34. In February 2006, Defendant Fidelity filed a rate manual with the Connecticut Insurance Department, to be effective for all applications for title insurance received between February 9, 2006 to the present ("2006 Rate Manual"). The 2006 Rate Manual is annexed hereto as Exhibit B and is incorporated by reference.

35. The 2006 Rate Manual establishes a "regular rate" and a "reduced rate" in the context of refinance mortgages. See 2006 Rate Manual at ¶ 5 and schedule attached thereto.

36. Section 5 of the 2006 Rate Manual provides in relevant part:

> Whenever mortgage insurance is applied for within ten years from the date of issuance of a policy by any licensed insurer in Connecticut and the premises to be insured are identical and there has been no change in the fee ownership, the Company may accept application, the charge for which insurance shall be 60 percent of the applicable scheduled rate up to the largest amount of existing insurance (fee policy or

Case 3:06-cv-0057 .WT Document 74 Filed 04/20/.7 Page 9 of 21

present balance of existing insured mortgage) plus the full applicable scheduled rate on any excess.

37. On or about June 3, 2004, Plaintiff Lentini refinanced the existing mortgage on a property located at 57 Greenhouse Boulevard, West Hartford, Connecticut (the "Transaction").

38. In connection with the Transaction, Plaintiff Lentini paid a premium for the purchase of title insurance from Defendant Fidelity.

39. Plaintiff's review of the HUD-1 form, which included the representation regarding the premium for the title insurance policy, took place during the application process – at the closing of the Transaction, prior to payment of the title insurance premium, which occurred with the exchange of funds at the closing of the Transaction.

40. In connection with the closing of the Transaction, held on or about June 3, 2004, at 57 Greenhouse Boulevard, West Hartford, Connecticut, Defendant Fidelity, through its agent MultiState Title Co., LLC (a) concealed from the Plaintiff that he qualified for and was entitled to receive the discounted refinance rate and (b) supplied false, misleading, inaccurate and incomplete information about the applicable rate for title insurance by charging the Plaintiff Six Hundred Fifty Dollars ($650.00) for title insurance. The Defendant's non-disclosures and false, misleading, inaccurate and incomplete statements were material to the Transaction.

41. In the Transaction, Plaintiff qualified for and was entitled to receive a discounted refinance rate because he had applied for title insurance within ten years from the date of issuance of a policy by a licensed insurer in Connecticut, the premises to be insured were identical, and there had been no change in the fee ownership of the property. In comparable transactions involving each member of the Class, the Class members qualified for and were

entitled to receive a discounted refinance rate because they had applied for title insurance within ten years from the date of issuance of a policy by a licensed insurer in Connecticut, the premises to be insured were identical, and there had been no change in the fee ownership of the property.

42. As set forth above, Defendant Fidelity was required to give the discounted refinance rate to consumers in connection with refinance transactions. *See* 2002 Rate Manual ¶ 5. Furthermore, the fact that the transactions were refinance transactions was reflected in the chain of title and closing documents for the Plaintiff's and the Class members' properties and, therefore, Defendant knew or should have known that Plaintiff and the Class members qualified for, and were entitled to receive, a discounted refinance rate.

43. Defendant, however, failed to give the discounted refinance rate to Plaintiff or the Class members or to inform Plaintiff or the Class members that they qualified for such rates. Instead, in violation of Conn. Gen. Stat. § 38a-419, Defendant charged the Plaintiff and Class members premium rates in excess of the refinance rates, resulting in financial harm to the Plaintiff and Class members.

44. Defendant has maintained, and continues to maintain, a common, routine and customary business practice of: (a) overcharging consumers by failing to charge refinance rates to numerous residential customers who qualify for such rates in connection with refinance transactions; and (b) failing to inform such customers that they qualify for such rates.

45. As a result of the foregoing business practices, numerous residential customers who qualify for refinance rates, such as Plaintiff and the Class members, do not receive such discounted refinance rates and are not informed of the availability of or that they qualify for such discounted rates.

Case 3:06-cv-0057. WT Document 74 Filed 04/20/2 7 Page 11 of 21

46. Plaintiff and the members of the Class seek, *inter alia*, damages representing the difference between the amount of premium for title insurance charged by Defendant without the refinance rate discount and the amount of premium for title insurance that should have been charged if the refinance rate discount had been provided by Defendant as required by law. Unless the court issues an order declaring this practice to be illegal, and enjoining it in the future, Plaintiff and the members of the Class will continue to be harmed by this deceptive and illegal practice.

**COUNT I**

**(Connecticut Unfair Trade Practices Act)**

47. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as if fully alleged herein.

48. Defendant has acted, as alleged herein, in the conduct of trade or commerce as defined in Conn. Gen. Stat. § 42-110a(4).

49. Defendant owed a duty of full and fair disclosure to Plaintiff and Class members regarding the statutorily mandated rates and a duty to charge the correct rates arising from its superior knowledge of the correct rate and arising from a partial speaking in revealing only the higher priced, regular rate. In addition, Defendant had a duty of disclosure based on its knowledge that Plaintiff and Class members were paying the regular rate rather than the discounted refinance rate on the basis of mistaken knowledge.

50. Defendant has regularly been engaged, as part of its general business practices, in: (a) wrongfully misrepresenting the applicable rate for title insurance by failing to inform customers who qualify for refinance rates that they qualify for such rates; (b) wrongfully making such misrepresentations for the purpose of obtaining an increased premium for the

Case 3:06-cv-0057. WT Document 74 Filed 04/20/2 Page 12 of 21

policies from the Plaintiff and the Class members; and (c) wrongfully charging and obtaining an increased premium for the policies from the Plaintiff and the Class members.

51. Defendant's practices, as outlined above, violate Connecticut General Statutes § 38a-419.

52. Defendant's failure to deal fairly and in good faith with the Plaintiff, as outlined above, violates the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. §§ 38a-816(1)(a) and 38a-816(8).

53. Defendant's conduct is part of a general business practice that constitutes unfair and deceptive acts in violation of Conn. Gen. Stat. § 42-110b(a).

54. As a direct and proximate result of Defendant's violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), Plaintiff and the Class members have suffered ascertainable losses under Conn. Gen. Stat. § 42-110g(a) in an amount to be proved at trial.

55. As a result of Defendant's unfair and/or deceptive acts or practices, Defendant has reaped ill-gotten profits and gains, which it otherwise would not have received and which, in equity, it should be required to disgorge.

56. Defendant is also liable, pursuant to Conn. Gen. Stat. § 42-110g(a), for punitive damages.

57. Furthermore, Defendant is liable, pursuant to Conn. Gen. Stat. § 42-110g(d), for costs and reasonable attorneys' fees.

58. In compliance with Connecticut General Statutes § 42-110g(c), a copy of this Complaint has been mailed to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection on this date.

Case 3:06-cv-0057. NT Document 74 Filed 04/20/2 Page 13 of 21

**COUNT II**
**(Fraudulent Misrepresentation)**

59. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 58 of this Complaint as if fully rewritten herein.

60. In connection with the closing of the Refinance Transaction held on or about June 3, 2004 at 57 Greenhouse Boulevard, West Hartford, Connecticut and comparable transactions involving each member of the Class, Defendant, through its agent, MultiState Title Co., LLC, supplied false, misleading, inaccurate and incomplete information about the applicable rates for title insurance, charging Plaintiff Six Hundred Fifty Dollars ($650.00) for title insurance rather than the discounted refinance rate pursuant to the rate schedule filed by Fidelity with the Connecticut Insurance Department. This false, misleading, inaccurate and incomplete information was material to the transactions.

61. Defendant had the means to know and knew that the Plaintiff and Class members qualified for and were entitled to receive a discounted refinance rate in connection with their refinance transactions, and that the information it supplied about the applicable rates for title insurance was false, misleading, inaccurate and incomplete.

62. Defendant owed a duty of full and fair disclosure to Plaintiff and Class members regarding the statutorily mandated rates and a duty to charge the correct rates arising from its superior knowledge of the correct rate and arising from a partial speaking in revealing only the higher priced, regular rate. In addition, Defendant had a duty of disclosure based on its knowledge that Plaintiff and Class members were paying the regular rate rather than the discounted refinance rate on the basis of mistaken knowledge.

Case 3:06-cv-0057 WT   Document 74   Filed 04/20/2   Page 14 of 21

63. Although Defendant had a duty to disclose and charge the statutorily-mandated rates, Defendant failed to inform Plaintiff and each member of the Class that they qualified for and were entitled to receive a discounted refinance rate in connection with their refinance transactions. These undisclosed facts were material to the transactions.

64. Defendant's misrepresentation of the applicable rates for title insurance, Defendant's failure to inform Plaintiff and each member of the Class that they qualified for and were entitled to receive a discounted refinance rate, and Defendant's overcharging for title insurance were in violation of Connecticut General Statutes § 38a-419.

65. Defendant intentionally failed to disclose such facts with the intent to induce Plaintiff and the members of the Class into relying on such misrepresentations and non-disclosures and paying rates that were higher than the refinance rates.

66. Plaintiff and the Class members reasonably and justifiably relied on Defendant's misrepresentations and non-disclosures to their detriment.

67. As a direct and proximate result of Defendant's fraudulent misrepresentations and non-disclosures, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

68. Defendant acted wantonly, intentionally and with actual malice and/or with reckless indifference for the rights of Plaintiff and the Class members, thereby entitling Plaintiff and the Class members to recover punitive damages.

## COUNT III

### (Negligent Misrepresentation)

69. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 68 of this Complaint as if fully alleged herein.

Case 3:06-cv-0057. WT Document 74 Filed 04/20/2 7 Page 15 of 21

70. Defendant knew or should have known that Plaintiff and each member of the Class qualified for, and were entitled to receive, a discounted refinance rate in connection with their refinance transactions.

71. Defendant owed a duty of full and fair disclosure to Plaintiff and Class members regarding the statutorily mandated rates and a duty to charge the correct rates arising from its superior knowledge of the correct rate and arising from a partial speaking in revealing only the higher priced, regular rate. In addition, Defendant had a duty of disclosure based on its knowledge that Plaintiff and Class members were paying the regular rate rather than the discounted refinance rate on the basis of mistaken knowledge.

72. In connection with the closing of the Transaction, and comparable transactions involving each member of the Class, although Defendant had a duty to charge the statutorily-mandated refinance rates, Defendant (a) concealed from the Plaintiff that he qualified for and was entitled to receive discounted refinance rates, and (b) supplied false, misleading, inaccurate and incomplete information about the applicable rates for title insurance by charging rates in excess of the refinance rates. These undisclosed facts and false, misleading, inaccurate or incomplete statements were material to the transactions and were made for the guidance of Plaintiff.

73. Defendant's false misrepresentations and omissions, as described above, violated Conn. Gen. Stat. § 38a-419.

74. Defendant failed to exercise reasonable care in communicating accurate and complete information about the applicable rates for title insurance.

75. Plaintiff and the Class members reasonably and justifiably relied on Defendant's false misrepresentations and omissions to their detriment.

Case 3:06-cv-0057 .WT Document 74 Filed 04/20/. .7 Page 16 of 21

76. As a direct and proximate result of Defendant's false misrepresentations and omissions, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

**COUNT IV**

**(Unjust Enrichment)**

77. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 76 of this Complaint as if fully alleged herein.

78. Defendant have benefited by charging, collecting and retaining title insurance premiums in excess of the discounted refinance rates to which the Plaintiff and the Class members were entitled.

79. The Defendants unjustly charged the Plaintiff and Class members for such benefits.

80. As a direct and proximate result of Defendant's charging, collection, and retention of the excessive rates, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

**COUNT V**

**(Breach of Contract)**

81. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 80 of this Complaint as if fully alleged herein.

82. Defendant formed an agreement and entered into a contract with Plaintiff and the Class members including offer, acceptance, and consideration (hereinafter called the "Contract").

Case 3:06-cv-0057 .WT Document 74 Filed 04/20/. 7 Page 17 of 21

83. Pursuant to that Contract, Plaintiff and the Class members paid money to Defendant in exchange for Defendant providing a lender's policy of title insurance to Plaintiff's and the Class Members' lenders, so that they could obtain mortgage refinancing. Defendant received premiums in exchange for the issuance of a policy of title insurance.

84. The Contract included, without limitation, Defendant's obligation to charge a premium in accordance with the 2002 Rate Manual and the 2006 Rate Manual filed by Defendant with the Connecticut Insurance Department. *See* 2002 Rate Manual ¶ 5; 2006 Rate Manual ¶ 5.

85. Plaintiff and the Class members performed their obligations under the contract by paying the premiums charged by Defendant.

86. Defendant was obligated pursuant to the Contract, without limitation, to (a) charge Plaintiff and the Class members the discounted refinance rate for title insurance; and (b) to inform Plaintiff and the Class members that they qualified for such discounted rates.

87. Defendant breached the Contract by, without limitation, (a) overcharging Plaintiff and the Class members by failing to give them the discounted refinance rate for title insurance; and (b) failing to inform Plaintiff and the Class members that they qualified for such discounted rates.

88. As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

**COUNT VI**

**(Money Had and Received)**

89. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 88 of this Complaint as if fully alleged herein.

Case 3:06-cv-0057. .WT Document 74 Filed 04/20/. 7 Page 18 of 21

90. Defendant wrongfully charged Plaintiff and the Class members monies by charging, collecting, and retaining title insurance premiums in excess of the discounted refinance rates to which Plaintiff and the Class members were entitled (the "monies").

91. Plaintiff and the Class members paid the monies to Defendant inadvertently and by mistake, and Plaintiff and the Class members were free from any moral or legal obligation to make such payment.

92. Defendant is wrongfully in possession of the monies which in equity and good conscience it has no right to retain.

93. Defendant has benefited from receipt of the monies.

94. Plaintiff and the Class members are entitled under principles of equity and good conscience to the return of the monies.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

1. Declaring that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for an order certifying this case as a class action;

2. Declaring that: (a) Plaintiff and the Class members qualified for refinance rates in connection with their refinance transactions; (b) Defendant was obligated to give discounted refinance rates to Plaintiff and the Class members, and to inform Plaintiff and the Class members that they qualified for such discounted rates; and (c) Defendant violated Connecticut law by failing to charge Plaintiff and the Class members the refinance rates and by failing to inform Plaintiff and the Class members that they qualified for such rates;

Case 3:06-cv-0057. .WT Document 74 Filed 04/20/2..7 Page 19 of 21

3. Issuing a permanent injunction requiring Defendant to identify and notify in writing all residential consumers who pay premiums for the purchase of title insurance from Defendant of the conditions upon which they may qualify for a discounted refinance rate;

4. Ordering Defendant to refund the illegal amounts charged to Plaintiff and the Class members;

5. Awarding compensatory damages on behalf of Plaintiff and the Class members in an amount to be proved at trial;

6. Awarding punitive damages;

7. Awarding Plaintiff and the Class all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorneys' fees; and

8. For such other and further relief as allowed by law and/or as is equitable under the circumstances.

Case 3:06-cv-0057. .WT Document 74 Filed 04/20/2 7 Page 20 of 21

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 20, 2007

THE PLAINTIFF,
SALVATORE J. LENTINI
BY MOTLEY RICE LLC
HIS ATTORNEYS

By *_/s/ Collin O'Connor Udell_*

William H. Narwold (CT 00133)
Ingrid L. Moll (CT 21866)
Collin O'Connor Udell (CT 26892)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1676
Fax: (860) 882-1682
E-mail: bnarwold@motleyrice.com
imoll@motleyrice.com
cudell@motleyrice.com

Case 3:06-cv-0057. .WT Document 74 Filed 04/20/2. .7 Page 21 of 21

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2007, a copy of the foregoing First Amended Class Action Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Collin O'Connor Udell*
Collin O'Connor Udell (CT 26892)